CHARLES T. LOWNDES, EXECUTOR, FOR A. S. IZARD *vs.* THE
EXECUTORS OF M. KING.

The assignee of a money bond may bring suit thereon in the name of the obligee, or, if he be dead, in the name of his executor or administrator.

Bond given by H., as principal, and M., as surety, to I.    L. was the executor of I.   H endorsed on the bond as follows: " I hereby assign the annexed bond to L., he having loaned me the funds to pay the same to estate I." In an action on the bond by L. for the use of another, against the executors of M.: *Held,* That this endorsement might be explained by oral evidence.

It is error in the Judge to take from the jury a question of fact, depending upon oral evidence, decide it himself, and instruct them how to find.

It is not a ground of objection to plaintiff's recovery, in an action of debt on bond, brought in the name of the executor of the obligee, that, after *oyer,* the plaintiff added a date to an assignment previously endorsed on the bond.

BEFORE GLOVER, J., AT CHARLESTON, JUNE TERM, 1868.

The report of His Honor, the presiding Judge, is as follows :

" The action was debt against the executors of the late Mitchell King, who was the surety of A. M. Huger on a bond in favor of the plaintiff, C. T. Lowndes, executor of the late Jacob Bond I'On, and the following is a narrative of the facts of the case, shown by the evidence :

" A. M. Huger, wishing to raise money, applied to the plaintiff, who advanced it from the assets of the estate of Bond I'On, in his hands as executor ; and, to secure the payment, took A. M. Huger's bond, with the late Mitchell King as surety. C. T. Lowndes afterwards, desiring to close his administration of the estate of Bond I'On, and to settle with the legatees, demanded payment of the bond from A. M. Huger, who made efforts to do so, and proposed to sell his Savannah River plantation for that purpose ; and, failing to raise the money, C. T. Lowndes suggested to him that Allan S. Izard, trustee of Mrs. Sabina E. Lowndes, was in possession of funds, and that he might procure from said trustee an amount sufficient to satisfy the bond, on the assignment of it to said trustee. February 10, 1860, the negotiation was entered into between the trustee and A. M. Huger, C. T. Lowndes receiving the amount due on the bond, with which he debited himself, as executor of Bond I'On, in the Ordinary's office, and settled with the legatees. No formal assignment of the bond, in writing, was made by C. T. Lowndes to Allan S. Izard, trustee, at the time that he received the money, nor did he do so until 1865. The reason assigned for this by C. T. Lowndes

was, that the papers of the estate of Bond I'On, and with them this bond, were left in the custody of Herckenwrath, Wragg & Co., who generally acted for him, and that all the receipts on the bond were entered by them, except the two last; that his papers, including this bond, never came into his hands until after the end of the war, in 1865, when he assigned it to Allan S. Izard, trustee, dating the assignment in February, 1860, according to the understanding of the parties.

"From this state of facts, it is manifest that the obligors on this bond have never satisfied it, except by funds advanced by Allan S. Izard, trustee, on condition that it should be assigned, and that said trustee is the owner, and entitled to payment. If the assignment had been regularly made before the commencement of this action, according to the provisions of the Act of 1798, (5 Stat., 330,) and the action had been brought in the name of the trustee, as assignee, I presume that no ground of defence, now relied upon, would have been pretended; and, in the absence of such assignment, the legal owner or holder could, before the Act of 1798, and might now, bring the action in the name of the obligee, for his use and benefit, and that was done in this case. I held and instructed the jury that the plaintiff was entitled to their verdict, who found accordingly.

"The defendants have appealed, on the several grounds relied upon in the defence, for a new trial, which will be considered *seriatim*:

"1. The endorsement referred to in this ground is as follows: 'Charleston, 10th February, 1860. I hereby assign the annexed bond to Mr. C. T. Lowndes, he having loaned me the funds to pay the same to estate Col. J. B. I'On.' (Signed,) 'A. M. Huger.' C. T. Lowndes stated that this endorsement was made by A. M. Huger, while the bond was in the safekeeping of Herckenwrath, Wragg & Co., and that he never saw it until after the close of the war, in 1865, and he presumed that A. M. Huger, (who acknowledged that the bond was the property of the trust estate), made the endorsement in this form, supposing it proper and necessary. The proof was, that C. T. Lowndes informed A. M. Huger that he could borrow the money of the trust estate of Mrs. Sabina E. Lowndes, on the assignment of the bond to the trustee—not to C. T. Lowndes. The plaintiff, as executor of Bond I'On, did receive the money, but it was advanced by the trustee of Mrs. Sabina E. Lowndes, according to the negotiation between the parties, and was rather a purchase by the trustee than a payment by the obligor.

" 2. This ground and the first submit the same question, and the remarks made respecting the latter apply to the former. The several endorsements made on the bond were explained by C. T. Lowndes, and the true history of the transaction was given by him.

" 3. I do not understand that the plaintiff claims under a written endorsement, or that the suit is brought by an assignee; but that the obligee's name is used for the benefit of Allan S. Izard, trustee, who owns the bond; and I have no doubt that parol evidence was admissible, to explain the endorsements and the circumstances under which they were made.

" 4. As was stated, in considering the last ground, Allan S Izard, trustee, does not claim through C. T. Lowndes, under a written assignment, which would enable him to sue as assignee; but C. T. Lowndes sues to his use.

" 5. The endorsement made by A. M. Huger, and copied above. does state that the funds were loaned by C. T. Lowndes; but C. T. Lowndes proved that this was a misapprehension of A. M. Huger, and that the funds were advanced by the trustee of Mrs. Sabina E. Lowndes, to purchase the bond, and to accommodate A. M. Huger; and I apprehend that if this endorsement, which (with no purpose to do so) misstated the fact, had not been made on the bond, there would have been very slight foundation for the objections urged in the several grounds of appeal.

" 6. In reference to this ground the evidence was, that the bond did not come into the possession of C. T. Lowndes until after the war, in 1865, and that he did, as soon after as he could conveniently do so, assign it, in writing, dating the assignment at the time that the trustee advanced the money to purchase the bond. If the action had been brought in the name of Allan S. Izard, trustee, as assignee, the objection, that the date was added to the assignment after *oyer* craved, might have availed.

" 7. There was no evidence showing such an extension of time or indulgence as, in my opinion, discharged the surety. Mere indulgence, without some proof of fraud or fraudulent collusion, will not operate to discharge a surety.—*Cornwell* vs. *Holly*, 5 Rich., 47. Nor was the contract so varied as to operate a discharge. With the explanations offered, it appeared to me that the circumstances present the ordinary case of a transfer of an obligee's interest in a bond to a third person, for a valuable consideration."

The defendants appealed, and now moved this Court for a new trial, on the grounds :

1. Because the endorsement upon the bond, by Arthur M. Huger, is set up by the plaintiff himself as evidence, and proves that the obligation to the estate of Col. Jacob Bond I'On was discharged by payment.

2. Because the plaintiff claims, for the use of Allan S. Izard, trustee, and the very evidence produced to show the interest of the real plaintiff in interest establishes the fact that the old obligation, upon which Mitchell King was surety, was discharged, and a new obligation entered into between the principal, Arthur M. Huger, and Charles T. Lowndes, individually, with which new contract Mitchell King had no privity.

3. Because the plaintiff claims under a written endorsement, and should not be allowed to explain it away by verbal testimony.

4. Because the assignee, Allan S. Izard, claims title through Charles T. Lowndes, who could only have acquired title by assignment of the executor of Jacob Bond I'On, of which there is no written evidence.

5. Because the only evidence of the termination of the interest of the executor of I'On in the bond, is evidence of payment by Arthur M. Huger, the principal, with funds loaned him for that purpose by Charles T. Lowndes.

6. Because a date was added by the plaintiff to the assignment to Allan S. Izard, trustee, after *oyer* craved and the instrument produced.

7. Because time was given by the creditor to the principal debtor, and the terms of the original contract otherwise varied, without the knowledge or consent of the surety, whereby he is discharged.

8. Because His Honor, the presiding Judge, erred in not charging the jury in conformity with the principles above set forth.

*DeSaussure, King*, for appellants.

———, contra.

April 29, 1869. The opinion of the Court was delivered by

MOSES, C. J. There are certain errors of fact in the report of the presiding Judge, made manifest by his statement of the testimony, which it is better now to note.

The bond sued on was made payable to Jacob Bond I'On, and not the executor, plaintiff here.

The assignment referred to in the report was endorsed on the bond in 1865, and dated February 10th, 1860.

As this case must be sent to the Court below for another trial, we shall refrain from all intimation of opinion as to the testimony already heard.

The grounds of appeal, however, must be considered, although a solution of the principles which they involve would not, in itself, be conclusive of the issues made by the pleadings; yet the points raised under them are considered by the appellants as bearing on the main position on which a new trial is claimed.

. It is alleged in the third ground that the plaintiff seeks a recovery under a written endorsement, and should not be allowed to explain it away by verbal testimony. This appears to be a clear misapprehension. The only endorsement which could convey a legal title to the bond would be by assignment. On the death of the obligee this vested in his executor, and the transfer of it by the executor to himself, in his individual character, while it would be a most anomalous act, would not change his status as to the right to sue.

He, however, makes no claim by virtue of any assignment. The action is in his name, for the benefit of another. If he had transferred it to a third person, by a writing therefor sufficient, still such assignee could waive the right which he would have, under the Act of 1798, (5 Stat. at Large, 330,) to bring action as assignee, and could maintain suit in the name of the obligee, or, if dead, his legal representative.— *Cunningham* vs. *Miller*, MS., Dec., 1820.

We do not feel ourselves at liberty to consider, in this connection, the *effect* of the endorsement of A. M. Huger, of date February 10th, 1860, but we must determine whether it could be explained by parol testimony. This constitutes the third ground, and our remarks will have the like application to the first, second and fifth grounds.

Did the endorsement constitute a contract, or an agreement, which could, in a Court of law, of itself, have any efficacy? He was the principal obligor in a joint and several bond, which, it is to be supposed, on the day stated, in some way came into his possession. He had no legal title to it, so far as it was an instrument conferring rights on him against others. He, (the obligor,) if he undertook anything by the act, assumed some relation to the instrument

which, in his conception, authorized him to assign it to the executor of the obligee, adding, that "he, the said C. T. Lowndes, had loaned him the funds to pay the same (the bond) to estate of Col. I'On." If standing alone, unexplained, could any legal consequence be drawn from it? If so, then the question would have been reduced to a bare inference of law, on which it would have been the province of the Judge to pass. This would produce a result entirely destructive of the claim on which we regard the defendants entitled to a new trial.

Conceding, for the sake of argument, that it was a contract, was it one so free from doubt, ambiguity or equivocal expression as to preclude the introduction of parol testimony for the purpose of explaining its true intent and meaning?

It is claimed, however, as a receipt. The rule, as to the admissibility of verbal testimony to explain a writing, admits of a much wider latitude, in regard to receipts, than it does to any other instruments.

So far as a receipt goes only to acknowledge payment, or delivery, it is merely *prima facie* evidence of the fact, and not conclusive; therefore, the fact which it recites may be contradicted by oral testimony.—1 Green. Ev., § 305, and the authorities there referred to.

As was said by Justice Williams, in *Fuller* vs. *Crittenden*, 9 Conn., 406: "The true view of the subject seems to be, that such circumstances as would lead a Court of Equity to set aside a contract, such as fraud, mistake or surprise, may be shown at law, to destroy the effect of a receipt."

Our own Courts have proceeded on this recognized principle. *Hogg* vs. *Brown*, 2 Brev., 223; *McDowell & Black* vs. *Ex'rs of Vanderberg*, 2 McC., 320; *Dobbin* vs. *Perry*, 1 Rich., 33; *Lewis* vs. *Bell*, 3 Strob., 260.

The sixth ground alleges that a date was added by the plaintiff to the assignment after *oyer* craved and the instrument produced.

It is not necessary to inquire what effect, in the state of the pleadings, the addition of a date to the assignment might have had, if the action were brought in the name of Izard, trustee, as assignee.

The purpose of prayer of *oyer* after *profert* of an instrument is to have it produced, and thereby made a part of the record, that the party, by proper pleading, may avail himself of any discrepancy or dissimilitude between the paper set out in the declaration and that exhibited, or claim judgment of *non pros*. If the true effect and meaning of the deed is misstated in the declaration, the

variance is cured, and becomes immaterial if the deed be set out on the plea of *oyer* and *non est factum* pleaded.—1 Chit. Pl., 433.

Here the allegation is not that the bond is different in any way from that described in the declaration, either on its face or endorsements, but that, *after* it was so set out and *oyer* claimed, a date was added to the assignment. This would involve a principle of a very different kind from that embraced in questions, arising under the law, applicable to the practice in regard to *profert on oyer.*

It would open for inquiry, not necessary here, the effect of the change of the writing, either by alteration or addition.

In any view, however, the defendant can derive no benefit from the exception taken in the said ground, because the plaintiff does not rest his rights to a recovery on the assignment.

It does not follow, because force and effect may not be given to the various grounds as presenting obstacles to a recovery, that, when taken together, they may not establish a sufficient right to the motion.

In our conception, the presiding Judge appears to have regarded the issues submitted as those of law for his judgment. If the verdict had been a special one, ascertaining facts, and leaving nothing to follow but his decision on the law, then he would have been in a position in which he could have ordered the *postea* to be delivered to the party in whose favor he pronounced judgment.

Presumptions, from evidence, of the existence of particular facts, are, in most, if not in all cases, mixed questions of law and fact.

Here the Judge left nothing for the jury to pass upon. In this, we think, he erred. True, the credibility of the witness was not involved; but yet the defendant had a right to the judgment of the jury on the effect of the facts, in writing, on the one side, and his explanation on the other; and who was to decide on the weight as tending to or producing conviction?

It is not to be denied that when it is clear, beyond dispute, that the facts proved can lead but to one conclusion, the Judge may state their legal effect to the jury, for then a deduction of law is to follow, and that is exclusively for him. We do not think that the consequence here.

Are the facts which may rebut the *prima facie* evidence of payment to be decided by the Judge, or is their force to be considered and passed on by the jury? As here, the endorsement by Mr. Huger, on the 10th February, 1860, shows that the bond was then in his possession, raising the presumption of payment.—2 Green.

Ev., 577. Who was to decide whether the oral evidence offered to rebut it was sufficient? The Judge or the jury?

If His Honor had charged on the conclusions of law to be applied to the case, as arising out of the testimony, viewed in the different aspects insisted on by the plaintiff and defendants, and instructed the jury to apply the law, as they might be, the one way or the other, impressed by the evidence, we would not have felt bound to disturb a verdict thus found. We fear, however, that the right of the defendants to a full consideration of the facts was abridged, and, therefore, regard them entitled to a new trial.

The views which we have expressed render unnecessary any comment on the fourth ground. We have purposely avoided all remark on the seventh ground. Whatever benefit the defendants can derive, representing a surety, from the acts of the principal and obligee, must arise out of, and be determined by, the circumstances proved on the trial ordered.

The motion is granted.

*Willard*, A. J., concurred.